EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| CIC Construction Group, S.E.<br><br>Peticionario<br><br>v.<br><br>Junta Revisora de Subastas de la Administración de Servicios Generales<br><br>Recurrida<br><br>v.<br><br>Junta de Subastas de Mejoras Permanentes de la UPR; Aireko Construction, LLC; F&R Construction Group, Inc.<br><br>Partes con Interés | CT-2016-0006<br><br><br><br><br>consolidado con | 2016 TSPR 240<br><br>196 DPR ____ |
| Aireko Construction, Corp., S.E.<br><br>Recurrido<br><br>v.<br><br>Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico; Universidad de Puerto Rico<br><br>Peticionarios | CC-2016-0347 | |
| F & R Construction Group, Inc.<br><br>Recurrido<br><br>v.<br><br>Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico; Universidad de Puerto Rico<br><br>Peticionarios | | |

Número del Caso: CT-2016-6
                 CC-2016-347


Fecha: 7 de diciembre de 2016


Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel IV

CC-2016-347

Abogados de la Parte Peticionaria:

    Lcda. Allan E. Charlotten-Rivera
    Lcdo. Carlos J. Torres Vélez
    Lcda. Eddalee Quiñones-Pedrogo
    Lcdo. Tomás Correa Acevedo

Abogados de la Parte Recurrida:

    Lcdo. Fernando E. Agrait Betancourt
    Lcda. Norma Berríos Silva
    Lcdo. Francisco Ramos Martínez

CT-2016-6

Abogados de la parte Peticionaria:

    Lcda. Eddalee Quiñones-Pedrogo
    Lcdo. Tomás Correa Acevedo




Materia: Derecho Administrativo: Foro en jurisdicción para atender revisión de una determinación de la Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| CIC Construction Group, S.E.<br><br>Peticionario<br><br>v.<br><br>Junta Revisora de Subastas de la Administración de Servicios Generales<br><br>Recurrida<br><br>v.<br><br>Junta de Subastas de Mejoras Permanentes de la UPR; Aireko Construction, LLC; F&R Construction Group, Inc.<br><br>Partes con Interés | CT-2016-0006<br><br><br><br>consolidado con | |
| Aireko Construction, Corp., S.E.<br><br>Recurrido<br><br>v.<br><br>Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico; Universidad de Puerto Rico<br><br>Peticionarios | | *Certiorari* |
| F & R Construction Group, Inc.<br><br>Recurrido<br><br>v.<br><br>Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico; Universidad de Puerto Rico<br><br>Peticionarios | CC-2016-0347 | |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 7 de diciembre de 2016.

Tenemos ante nuestra consideración una pugna jurisdiccional suscitada entre un organismo administrativo y el foro judicial. A través de estos recursos se

cuestiona, específicamente, si la revisión de una determinación de la Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico (**JSMP-UPR**), mediante la cual se adjudicó la buena pro de un proyecto tomando en consideración la reputación e integridad comercial de los proponentes, le corresponde en primera instancia al Tribunal de Apelaciones o si, por el contrario, es menester acudir inicialmente ante la Junta Revisora de Subastas de la Administración de Servicios Generales (**JRS-ASG**).

## I. TRASFONDO PROCESAL

Durante el mes de **agosto de 2014** la JSMP-UPR publicó el *Aviso de Solicitud de Cualificaciones (RFQ) JSMP 15-001-RFQ* (***Request for Qualifications*** o **RFQ**)[1] con el propósito de seleccionar empresas aptas para someter propuestas para el desarrollo y la construcción de las facilidades de los Laboratorios de Neuroplasticidad y Síntesis Química, así como las instalaciones de un *Vivarium*,[2] en el Edificio de Ciencias Moleculares de la Universidad de Puerto Rico (**UPR**). De los nueve (9) solicitantes iniciales, únicamente las tres (3) empresas que obtuvieron la mejor puntuación en

---

[1] Este mecanismo, según provisto en el Art. 20 del Reglamento de Adjudicación de Proyectos de Mejoras Permanentes de la Universidad de Puerto Rico, Reglamento Núm. 8369 de la Universidad de Puerto Rico de 5 de junio de 2013, se utiliza para aquellos casos en que, debido a las particularidades del proyecto del que se trata, no existe una lista de empresas cualificadas para realizar la obra. De este modo, se identifican proponentes potenciales que cumplan con unos requisitos mínimos de aptitud, experiencia y capacidad económica en función de las exigencias propias de la labor programada.

[2] En español, vivario, se define como una instalación para conservar animales vivos de pequeño tamaño. M. Moliner, <u>Diccionario de uso del español</u>, 3ra ed., Madrid, Ed. Gredos, 2007, Vol. II. En este caso, el vivario será destinado para fines de observación e investigación científica.

el proceso de RFQ se certificaron como cualificadas para posteriormente someter propuestas dirigidas a ejecutar las obras.   Éstas fueron: Aireko Construction Corp. (**Aireko**), F&R Construction Group., Inc. (**F&R**), y CIC Construction Group, S.E. (**CIC**).[3]  Acorde a lo anterior, el **12 de junio de 2015** la JSMP-UPR le cursó una invitación a estas tres (3) corporaciones para que sometiesen sus respectivas propuestas selladas atinentes al desarrollo programado JSMP15-001-RFP, a través del método de requerimiento de propuestas "RFP" (*Request for Proposal* o **RFP**).[4]

Luego de varios incidentes procesales, el Comité Evaluador nombrado para asistir en el proceso de análisis de las propuestas, unánimemente recomendó a CIC para llevar a cabo el proyecto.   Entendió que CIC ofreció la mejor opción en comparación con las otras dos (2) empresas participantes dentro de los parámetros de selección previamente establecidos por la JSMP-UPR.

El **26 de octubre de 2015**, la JSMP-UPR emitió un primer *Aviso de Adjudicación de la Propuesta Sellada* a favor de CIC.   El documento no detalló las razones para la selección.   Además, se apercibió un término equivocado y más corto que el aplicable para los afectados tramitar una solicitud de reconsideración.   Inconformes con tal

---

[3]     Véase el *Aviso de Lista de Proponentes Potenciales* de 5 de marzo de 2015.

[4]     El requerimiento de propuestas, o RFP, representa una alternativa al proceso de subasta para la adquisición de bienes y servicios por parte del Gobierno.  Se distingue por ser un mecanismo informal que permite negociaciones entre las partes, tanto en lo concerniente a los términos de la propuesta como en el precio, previo a la adjudicación de la buena pro.  Maranello *et al*. v. OAT, 186 DPR 780 (2012) (Sentencia); Caribbean Communications v. Pol. de PR, 176 DPR 978 (2009); R&B Power v. ELA, 170 DPR 606 (2007).

decisión, Aireko solicitó reconsideración ante la JSMP-UPR mientras que F&R acudió directamente al Tribunal de Apelaciones mediante recurso de revisión judicial. Eventualmente, el Panel de Reconsideración #2 de la JSMP-UPR dejó sin efecto la determinación impugnada y ordenó a la JSMP-UPR emitir un nuevo aviso de adjudicación del proyecto JSMP 15-001-RFP, conforme a derecho.

A tono con lo anterior, el **23 de diciembre de 2015**, la JSMP-UPR notificó un segundo *Aviso de Adjudicación de la Propuesta Sellada (RFP)*. Nuevamente escogió a CIC como la agraciada, conforme a la recomendación del Comité Evaluador, a base del criterio de mejor valor o *Best Value* según dispuesto en el RFP.

Se anejaron al aviso las tablas preparadas para cada uno de los tres (3) participantes, donde se desglosó la puntuación otorgada por el Comité Evaluador en los renglones concernientes a los componentes técnicos (*Technical Evaluation Criteria*) del proyecto con la explicación correspondiente. Igualmente, se incluyeron los puntos concedidos a base de los precios sugeridos por los proponentes conforme a una fórmula (*Price Evaluation Criteria*) fijada en el RFP.

En el aviso se indicó además, que el Comité Evaluador también había tomado en consideración la reputación e integridad comercial de los proponentes, según la información provista por estos, así como por información difundida públicamente. A esos efectos, se reseñaron ciertos procesos iniciados en el foro federal contra dos

(2) entidades relacionadas a F&R,**5** así como contra Aireko y dos (2) de sus empleados,**6** por violaciones a estatutos ambientales federales.

Como fundamento para su determinación, la JSMP-UPR destacó que CIC obtuvo la mejor puntuación en el renglón técnico seguida por Aireko (CIC 807.5 y Aireko 776.25). Además, señaló que era el único licitador que contaba con la reputación e integridad comercial requerida para

---

**5**    El 27 de mayo de 2015 la Agencia de Protección Ambiental de los Estados Unidos (EPA, por sus siglas en inglés), presentó ante el Tribunal Federal para el Distrito de Puerto Rico una reclamación en contra de F&R Contractors Corp. y F&R Contractors, LLC por violaciones a varias disposiciones del *Clean Water Act* (CWA, por sus siglas en inglés). U.S. v. F&R Contractors Corp., *et al.*, Civil No. 15-1666. Según la Demanda, entre enero de 2004 y octubre de 2007, en el proceso de administración y construcción de ciertos proyectos residenciales, las empresas concernidas descargaron ilegalmente escorrentías pluviales contaminadas, las cuales discurrieron hasta cuerpos de agua de los Estados Unidos, según definidos en el estatuto. Ello en contravención con las disposiciones del CWA. En esa misma fecha se sometió un acuerdo entre las partes titulado *Consent Decree*. En el documento se indicó que F&R comparecía voluntariamente para asegurar su implementación. Posteriormente, se presentó una modificación al acuerdo para, entre otros asuntos, clarificar que tres (3) de los accionistas de las entidades demandadas eran dueños, en parte, de F&R.

**6**    En mayo de 2012, durante un proceso de demolición y renovación llevado a cabo en el noveno piso de la Torre Norte del Centro Gubernamental Minillas en San Juan, Puerto Rico, se removió de facilidades dentro del edificio, se arrojó en contenedores de basura en el exterior del edificio y posteriormente se trasladó material contaminado con asbesto sin tomar las debidas precauciones. En ese momento, Aireko operaba en calidad de contratista de la obra y, a su vez, había subcontratado los servicios de otra compañía para ayudar en la demolición.

Como resultado de lo anterior, se iniciaron procesos criminales en el Tribunal Federal para el Distrito de Puerto Rico por violación a varias disposiciones federales de protección ambiental en contra de Aireko y dos (2) de sus empleados. A esos efectos, según consta en los expedientes correspondientes del foro federal, primeramente, el 6 de diciembre de 2013 se sometieron cargos en contra de Kenneth M. Báez-Alers, empleado de Aireko, quien para esa fecha se desempeñaba como *Project Manager*, responsable de las operaciones de demolición y renovación en el lugar. U.S. v. Kenneth M. Báez-Alers, Criminal No. 13-871. Posteriormente, el 13 de julio de 2015, Aireko fue acusada por un Gran Jurado Federal. U.S. v. Aireko Construction Company, Criminal No. 15-448. Finalmente, el 19 de agosto de 2015, se sometió una acusación en contra de Edgardo Albino, Vice-Presidente de Operaciones de Aireko. U.S. v. Edgardo Albino, Criminal No. 15-527.

En diferentes fechas durante el 2013, 2015 y 2016 cada uno de los acusados llegó a un arreglo con el Departamento de Justicia Federal y suscribió un acuerdo o *Plea Agreement* mediante el cual aceptó los hechos constitutivos de violaciones a las leyes y reglamentación federal según relatados anteriormente. Véase, *Plea Agreement*, Docket Núm. 6, presentado el 6 de diciembre de 2013 en el caso U.S. v. Kenneth M. Báez-Alers, Criminal Núm. 13-871; *Plea Agreement*, Docket Núm. 43, presentado el 11 de enero de 2016 en el caso U.S. v. Aireko Construction Co., Criminal Núm. 15-448, y *Plea Agreement*, Docket Núm. 4, presentado el 19 de agosto de 2015 en el caso U.S. v. Edgardo Albino, Criminal Núm. 15-527.

realizar un proyecto de la magnitud y relevancia de la propuesta en cuestión, particularmente porque ésta envuelve la utilización de fondos federales provenientes de un *Grant* del *National Institute of Health*.

Tanto Aireko como F&R solicitaron reconsideración de la adjudicación ante el Panel de Reconsideración de la JSMP-UPR.[7] Además, Aireko presentó simultáneamente una reconsideración ante la JRS-ASG. El **15 de enero de 2016** el Panel de Reconsideración #2 de la JSMP-UPR denegó ambas solicitudes de reconsideración. Por lo cual, los dos (2) proponentes acudieron entonces al Tribunal de Apelaciones mediante recursos de revisión judicial,[8] donde éstos fueron posteriormente consolidados.

El **17 de febrero de 2016**, estando los recursos aún pendientes ante el Tribunal de Apelaciones, la JRS-ASG emitió una *Resolución* inicial donde concluyó que tenía jurisdicción para atender la reconsideración presentada por Aireko.[9] A pesar de que la JRS-ASG admitió que la UPR está excluida de las disposiciones del Plan de Reorganización Núm. 3 de 21 de noviembre de 2011, según enmendado (**Plan**), 3 LPRA Ap. XIX (Sup. 2016), concluyó que la JSMP-UPR se había sometido voluntariamente a su autoridad revisora en virtud del Art. 22 del Plan, 3 LPRA Ap. XIX (Sup. 2016)

---

[7]    Aireko solicitó reconsideración el 8 de enero de 2016, mientras que F&R hizo lo propio el 12 de enero de 2016. *Resolución* Panel de Reconsideración #2 JSMP-UPR.

[8]    Aireko recurrió al foro apelativo intermedio el 20 de enero de 2016 y F&R el 27 de enero de 2016.

[9]    Esta notificación no se envió ni a CIC ni a F&R.

(**Art. 22**). Señaló que, en el proceso de cualificar a los proponentes para el proyecto a través del RFQ, la JSMP-UPR les requirió certificar que no habían sido descalificados (*debarred*) para participar en contratos con el Gobierno Estatal. Adujo, además, que la Administración de Servicios Generales (**ASG**) es la única entidad competente para pasar juicio sobre dicha capacidad, a través del mecanismo del Registro Único de Licitadores (**RUL**).[10] Razonó que, por lo tanto, la JSMP-UPR había aceptado tácita y voluntariamente los procedimientos atinentes al RUL, incluyendo la autoridad de la JRS-ASG para atender la impugnación presentada por Aireko. No obstante, por entender erróneamente que aún quedaba pendiente una solicitud de reconsideración ante la JSMP-UPR, decidió esperar a que concluyera este trámite administrativo para entonces resolver el asunto planteado por Aireko en sus méritos.

Entre tanto, el **2 de marzo de 2016**, la JSMP-UPR sometió una *Moción Informativa* ante el Tribunal de Apelaciones notificando que el **1 de febrero de 2016**, el *System for Award Management* del Gobierno de Estados Unidos había publicado un *Exclusion Summary*, alertando que Aireko Construction, LLC quedaba inelegible de participar en contratos en que se utilicen fondos federales mientras se realizaba la investigación pertinente a los hechos antes relatados. Luego, el **8 de marzo de 2016**, CIC solicitó al Tribunal de Apelaciones que desestimara el recurso

---

[10] Reglamento del Registro Único de Licitadores del Gobierno de Puerto Rico, Reglamento Núm. 8182, Administración de Servicios Generales, 20 de abril de 2012.

presentado por Aireko por académico a base de su alegada inelegibilidad.

Mediante Sentencia de **10 de marzo de 2016** el Tribunal de Apelaciones adoptó las expresiones de la JRS-ASG en su *Resolución* de 17 de febrero de 2016. Así pues dictaminó que, a pesar de la UPR estar excluida de las disposiciones del Plan, ésta se acogió voluntariamente a los procesos del RUL por utilizar o beneficiarse de alguna manera de este Registro para cualificar a los licitadores. Igualmente apoyó su determinación en el Art. 22 del Plan. A base de lo anterior, concluyó que le correspondía a la JRS-ASG resolver los cuestionamientos relacionados a la reputación e integridad comercial de Aireko para poder competir en la propuesta.

El **16 de marzo de 2016**, la JRS-ASG emitió una *Resolución y Orden* en la que, entre otros asuntos, ordenó la paralización de toda acción relacionada a las propuestas del proyecto en controversia y anunció que pronunciaría su decisión sobre la impugnación de Aireko en treinta (30) días a partir del 11 de marzo de 2016.

El **31 de marzo de 2016** CIC presentó ante este Foro una *Solicitud de Certificación Interjurisdiccional* acompañada de una *Moción en Auxilio de Jurisdicción* mediante las cuales cuestionó la jurisdicción de JRS-ASG para intervenir en la adjudicación objetada por Aireko.

El 6 de abril de 2016, expedimos el auto solicitado por CIC, acogido como un recurso de *certiorari*, y paralizamos los procedimientos en el caso. Del mismo modo,

el 29 de abril de 2016, expedimos el auto de *certiorari* presentado por la JSMP-UPR y ordenamos la consolidación de ambos recursos.

## II. DERECHO APLICABLE

### A. Jurisdicción

Por tratarse de un planteamiento de naturaleza jurisdiccional, debemos resolver en primera instancia si el Tribunal de Apelaciones actuó correctamente al desestimar los recursos pendientes ante sí hasta tanto la JRS-ASG dispusiera de la solicitud de reconsideración presentada por Aireko.[11]

El término *jurisdicción* denota el poder o la autoridad que posee, ya sea un tribunal o un organismo administrativo, para atender asuntos sometidos para su consideración. Ayala Hernández v. Consejo Titulares, 190 DPR 547 (2014); DACo v. AFSCME, 185 DPR 1 (2012); ASG v. Mun. San Juan, 168 DPR 337 (2006). Similar al caso de los tribunales, las agencias administrativas están impedidas de asumir jurisdicción donde no existe. Ayala Hernández v. Consejo Titulares, *supra*; DACo v. AFSCME, *supra*.

El ámbito de autoridad de una entidad administrativa dependerá de la delegación de aquellos poderes que le hayan sido específicamente conferidos por la Asamblea Legislativa. Ayala Hernández v. Consejo Titulares, *supra*;

---

[11]   Es preciso señalar que únicamente Aireko aboga por la jurisdicción de la JRS-ASG como último foro revisor en el trámite administrativo con facultad para entender en el asunto que nos ocupa. Tanto los peticionarios en ambos recursos, como F&R, coinciden en que la tarea revisora recae en el Tribunal de Apelaciones.

DACo v. AFSCME, *supra*; López Nieves v. Méndez Torres, 178 DPR 803 (2010); D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Colombia, Ed. Forum, Colombia, 2013, Sec. 2.1, págs. 35-36. Es por ello que se hace necesario, como paso inicial para precisar la capacidad de un ente administrativo de poder intervenir en determinado asunto, examinar su ley habilitadora, también conocida como ley orgánica. Ayala Hernández v. Consejo Titulares, *supra*; DACo v. AFSCME, *supra*; ASG v. Mun. San Juan, *supra*.

Conforme a lo anterior, un organismo administrativo está vedado de asumir jurisdicción sobre un asunto a menos que esté claramente facultado en ley para ello. Ayala Hernández v. Consejo Titulares, *supra*; DACo v. AFSCME, *supra*; ASG v. Mun. San Juan, *supra*. A esos efectos hemos indicado que, "ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a la fuente de poder de una agencia administrativa". ASG v. Mun. San Juan, *supra*, pág. 343. Véanse además, DACo v. AFSCME, *supra*; Ayala Hernández v. Consejo Titulares, *supra*. Consiguientemente, aquellas actuaciones que no encuentren apoyo en el estatuto habilitador de una entidad administrativa, se reputarán nulas por constituir trámites *ultra vires*. Ayala Hernández v. Consejo Titulares, *supra*; DACo v. AFSCME, *supra*.

## B. Hermenéutica

Como regla general en materia de hermenéutica legal, el texto de la ley se impone si no existe margen de duda

sobre su acepción; así lo dictamina nuestro ordenamiento. Spyder Media, Inc. v. Municipio Autónomo de San Juan, 194 DPR 547 (2016); Doble Seis Sport v. Depto. Hacienda, 190 DPR 763 (2014); Rivera Fernández v. Mun. Carolina, 190 DPR 196 (2014). A esos efectos, el Art. 14 del Código Civil, 31 LPRA sec. 14 (2015), dispone que "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

Sin embargo, debemos ser cautelosos al llevar a cabo nuestro análisis ya que los estatutos han de interpretarse de manera integral acorde con la intención legislativa que los inspira. Ya anteriormente hemos advertido que "la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y su fin". Rivera Fernández v. Mun. Carolina, supra, a la pág. 202. Como cualquier otro estatuto, al estudiar las leyes habilitadoras, es menester examinar las expresiones de la Legislatura al promulgarlas. Igualmente, han de sopesarse la política pública y el interés social que se intenta promover. Ayala Hernández v. Consejo Titulares, supra. Véanse además, DACo v. AFSCME, supra; DACo v. Fcia. San Martín, 175 DPR 198 (2009); ASG v. Mun. San Juan, supra.

### C. El Plan de Reorganización

En el 2011, se aprobó el Plan con el propósito de brindar uniformidad y agilizar los procesos en la ASG atinentes al trámite de compras y adquisición de bienes y servicios no profesionales para los diversos componentes de la Rama Ejecutiva. Aun cuando el trámite de compras a

través de la ASG quedaba circunscrito a la Rama Ejecutiva, se autorizó, a las corporaciones públicas y a los municipios, a acogerse de manera **voluntaria** a los procesos establecidos por la ASG para estos propósitos. A tales efectos, el Plan fijó su alcance de la siguiente manera:

> Las disposiciones de este Plan regirán los procesos de **compras y adquisición** de bienes y servicios no profesionales **en la Rama ejecutiva según definida en este Plan.** En el caso de las **corporaciones públicas** y los municipios, éstas tendrán la **opción** de acogerse y beneficiarse de manera **voluntaria** de los sistemas que habrán de desarrollarse para adquirir bienes y servicios no profesionales por medio de un proceso a establecerse para las compras del Gobierno Estatal de Puerto Rico [...] (Énfasis nuestro). Art. 3, 3 LPRA Ap. XIX, Art. 3 (Sup. 2016).

De otra parte, la definición del término "Rama Ejecutiva" provista en el estatuto específicamente exceptuó a la UPR del esquema normativo del Plan a menos que se dispusiera otra cosa.[12]

A grandes rasgos, el Plan consta de tres (3) esquemas que impactan su viabilidad. El primero de ellos atiende lo relacionado a la logística y formalidades requeridas para

---

[12] Reproducimos a continuación la definición de "Rama Ejecutiva" consignada en el Plan de Reorganización Núm. 3 de 21 de noviembre de 2011, según enmendado (**Plan**), 3 LPRA Ap. XIX (Sup. 2016):

> Para propósitos de este Plan, los siguientes términos tendrán el significado que se dispone a continuación, **salvo que del propio texto del Plan se desprenda lo contrario.** [...]
>
> . . . . . . . .
>
> (s) <u>Rama Ejecutiva</u> - Todos los departamentos, dependencias, agencias e instrumentalidades de la Rama Ejecutiva del Gobierno de Puerto Rico, **excepto** las **corporaciones públicas y subdivisiones políticas del Gobierno de Puerto Rico,** la Oficina de Ética Gubernamental, **la Universidad de Puerto Rico** y la Comisión Estatal de Elecciones. (Énfasis nuestro). Art. 4(s) del Plan, 3 LPRA Ap. XIX (Sup. 2016).

efectuar las **compras** del Gobierno.[13]   De otra parte, se estableció el **RUL** y se encomendó su funcionamiento a la ASG.[14]   Por último, se creó la **JRS-ASG**.[15]

### 1. Adquisición de Bienes y Servicios No Profesionales

A pesar de que el Plan está dirigido a suplir las necesidades de la Rama Ejecutiva, a través de su Art. 3 se le reconoció igualmente a las corporaciones públicas y a los municipios el derecho a utilizar de manera **voluntaria** los métodos de adquisición dispuestos por la ASG.   Esta alternativa se viabiliza a través de pactos mediante los cuales las entidades gubernamentales exceptuadas del Plan, a su entera discreción, acuerdan expresamente con la ASG para que gestione sus compras.   El Art. 22 del Plan dispone lo siguiente sobre este particular:

> La Administración [ASG] tramitará a través de un sistema centralizado y automatizado, las **compras de bienes y servicios no profesionales** de la Rama Ejecutiva y las corporaciones públicas y municipios que **voluntariamente decidan utilizar los servicios de la Administración** y negociará contratos abiertos para las compras regulares. […]
>
> . . . . . . . .
>
> La Administración podrá hacer extensivo **mediante acuerdo entre la partes, cualquiera de estos servicios** a aquellos municipios, corporaciones públicas o ambos, que así lo soliciten.   La participación de dichos municipios o corporaciones públicas bajo este Plan será **voluntaria** y podrá ser para todas o sólo algunas de las **adquisiciones de bienes y servicios no profesionales**[…]   (Énfasis nuestro).

---

[13]     Arts. 22-38 del Plan, 3 LPRA Ap. XIX (Sup. 2016).

[14]     Arts. 39-43 del Plan, 3 LPRA Ap. XIX (Sup. 2016).

[15]     Arts. 51-58 del Plan, 3 LPRA Ap. XIX (Sup. 2016).

## 2. RUL

El RUL consiste de un listado de licitadores aspirantes a participar en los procesos de compra de bienes y servicios no profesionales de ciertas entidades gubernamentales los cuales han sido previamente calificados por la ASG.[16] Según legislado, le corresponde a la ASG verificar, mediante criterios objetivos, la probidad y condición financiera de aquellos individuos o empresas interesadas en hacer negocios con dependencias del Gobierno según designadas por el Plan.[17] Consiguientemente, la ASG tiene la responsabilidad de verificar la integridad y capacidad económica de los licitadores potenciales para asegurar que los entes gubernamentales concernidos "solamente contraten con personas naturales o jurídicas de probada solvencia moral y económica[…]". Art. 42(a) del Plan, 3 LPRA Ap. XIX (Sup. 2016). Parte de este trámite investigativo incluye cotejar que los aspirantes no hayan sido convictos de los delitos de fraude, malversación o apropiación ilegal de fondos públicos conforme estas violaciones aparecen detalladas en el Art. 3 de la Ley Núm. 458-2000, según enmendada, 3 LPRA sec. 928b (2011).[18]

La inscripción en el RUL es **mandatoria** para "[t]oda persona natural o jurídica interesada en entrar en el mercado de adquisición de bienes y servicios de la **Rama**

---

[16]    Art. 39 del Plan, 3 LPRA Ap. XIX (Sup. 2016).

[17]    Art. 42 del Plan, 3 LPRA Ap. XIX (Sup. 2016).

[18]    Art. 42(a) del Plan, 3 LPRA Ap. XIX (Sup. 2016).

**Ejecutiva, las corporaciones públicas y municipios del Gobierno** de Puerto Rico…". (Énfasis nuestro). Art. 40 del Plan, 3 LPRA Ap. XIX (Sup. 2016). Por lo cual, es necesario que estos individuos o empresas cumplan con los requisitos allí dispuestos para poder hacer negocios con aquellas entidades cubiertas por el RUL. De esta manera, los componentes gubernamentales concernidos vienen obligados a examinar las constancias del Registro como condición previa a contratar para sus compras. Art. 39, 3 LPRA Ap. XIX (Sup. 2016).

Con el propósito de asistir en la implementación del RUL, se promulgó el Reglamento del Registro Único de Licitadores del Gobierno de Puerto Rico, Reglamento Núm. 8182, ASG, 20 de abril de 2012 (**Reglamento Núm. 8182**). En este documento se consignan, entre otros, los procedimientos atinentes al ingreso,[19] así como a la denegatoria de ingreso al RUL.[20] También se provee el trámite aplicable a la suspensión de licitadores.[21] En esa línea, existen dos (2) procesos diferentes para remover a los licitadores del RUL. Primeramente, se provee para un trámite "ordinario", iniciado por la ASG cuando conoce que el licitador incurrió en alguna de las causales de

---

[19]     Reglamento del Registro Único de Licitadores del Gobierno de Puerto Rico, Reglamento Núm. 8182, ASG, 20 de abril de 2012, Arts. 4.1-4.3 (**Reglamento Núm. 8182**).

[20]     Art. 5.1 del Reglamento Núm. 8182.

[21]     El Art. 5.3 del Reglamento Núm. 8182 enumera las causales para suspender a un licitador previamente inscrito y, como consecuencia, excluirlo del RUL.

suspensión consignadas en el Reglamento.[22]  De otra parte, si la controversia sobre la aplicación de alguna de estas causales es incidental a un proceso asociado a una subasta, la Junta de Subastas de la ASG lo atenderá como parte del trámite de la adjudicación.  Este procedimiento se denomina "extraordinario".[23]

El Reglamento Núm. 8182 también excluyó a la UPR de los procesos atinentes al RUL.[24]

### 3. Junta Revisora de Subastas ASG – Ley Núm. 153-2015

En el Plan original se le delegó a la JRS-ASG la responsabilidad de evaluar **únicamente** las impugnaciones a las determinaciones de la Junta de Subastas de la ASG. Mediante la Ley Núm. 153-2015 se insertaron unas enmiendas al Plan las cuales **ampliaron** la jurisdicción de la JRS-ASG para que, **además** de la facultad de revisar las determinaciones de la Junta de Subastas de la ASG, según originalmente pautado, la JRS-ASG pudiese **evaluar adjudicaciones de las demás Juntas de Subastas de "las agencias o instrumentalidades de la Rama Ejecutiva".** (Énfasis nuestro).  Sec. 3 de la Ley Núm. 153-2015, enmendando el Art. 51 del Plan, 3 LPRA Ap. XIX (Sup. 2016).

---

**22**    Art. 5.4 del Reglamento Núm. 8182.

**23**    Art. 5.5 del Reglamento Núm. 8182.

**24**    El Art. 1.7(r) del Reglamento Núm. 8182 define el término Rama Ejecutiva de la siguiente manera:

> [T]odos los departamentos, dependencias, agencias e instrumentalidades de la Rama Ejecutiva del Gobierno de Puerto Rico, **incluyendo los municipios y corporaciones pública[s].**  Se **excluye** a la Oficina de Ética Gubernamental, a **la Universidad de Puerto Rico** y a la Comisión Estatal de Elecciones.  (Énfasis nuestro).

Sin embargo, la Ley Núm. 153-2015 expresamente limitó las instituciones impactadas por la enmienda a aquellas **no** exceptuadas por el Plan.[25] En otras palabras, las nuevas facultades revisoras de la JRS-ASG se extendieron únicamente a aquellas entidades gubernamentales **específicamente cobijadas por el Plan, que no hubiesen sido previamente exceptuadas**.

Estos cambios en el trámite procesal ante la JRS-ASG hicieron necesario realizar ciertos ajustes en las disposiciones pertinentes de la Ley de Procedimiento Administrativo Uniforme (LPAU)[26] con el propósito de fijar el trámite correspondiente a los nuevos procesos administrativos y a una eventual revisión judicial. En las enmiendas a la LPAU, según introducidas por la Ley Núm. 153-2015, se reconoce que en los casos de impugnación de subasta **no** siempre se tendrá que acudir a la JRS-ASG, pues su jurisdicción no abarca a **todas** las agencias de la Rama Ejecutiva.[27] Del mismo modo, al detallar los principios que

---

[25]  Conforme a esta pieza legislativa, le corresponde a la JRS-ASG, además de revisar las adjudicaciones de la Junta de Subastas de la ASG, intervenir en impugnaciones de subastas "hechas por cualquier otra agencia, instrumentalidad o entidad gubernamental de la Rama Ejecutiva **no excluida del presente Plan**". (Énfasis nuestro). Sec. 5 de la Ley Núm. 153-2015, enmendando el Art. 55(a) del Plan, 3 LPRA Ap. XIX (Sup. 2016).

[26]  Ley Núm. 170 de 12 de agosto de 1988, 3 LPRA sec. 2101 *et seq*. (2011 y Sup. 2016).

[27]  Así se desprende del propio texto de la Ley de Procedimiento Administrativo Uniforme (LPAU) al disponer que en estos casos la parte adversamente afectada podrá solicitar **reconsideración** ante la agencia o acudir ya sea a la JRS-ASG "**o la entidad apelativa que corresponda en ley o reglamento**[…]". (Énfasis nuestro). Sec. 9 de la Ley Núm. 153-2015, enmendando la Sec. 3.19 de la LPAU, 3 LPRA sec. 2169 (Sup. 2016).

Igualmente, se reconoce que concurren vías alternas al establecer los términos para presentar la **revisión judicial** de una orden o resolución final de "la agencia, de la Junta Revisora de Subastas de la Administración de Servicios Generales, **o de la entidad apelativa de subastas, según sea el caso**[…]". (Énfasis nuestro). Sec. 10 de la Ley Núm. 153-2015, enmendando la Sec. 4.2 de la LPAU, 3 LPRA sec. 2172 (Sup. 2016).

rigen las determinaciones relacionadas a las subastas para adecuarse a la normativa de la LPAU, nuevamente se hace la salvedad de las exclusiones consignadas en el Plan:

> Todas las agencias, entidades o instrumentalidades de la Rama Ejecutiva del Estado Libre Asociado de Puerto Rico, **no excluidas de las disposiciones del Plan de Reorganización Núm. 3-2011**[…] deberán cumplir con los siguientes criterios o estándares generales de evaluación o adjudicación en sus procesos de subastas, requerimiento de propuestas o requerimientos de cualificaciones[…] Sec. 11 de la Ley Núm. 153-2015, 3 LPRA sec. 2169 n. (Sup. 2016).

### III. DISCUSIÓN

### A. Artículo 22 del Plan de Reorganización

De entrada, debemos señalar que, en su *Resolución*, la JRS-ASG reconoció que la UPR estaba **exenta** de los trámites de revisión provistos en el Plan. No obstante, concluyó que la JSMP-UPR se **sometió** voluntariamente a la jurisdicción de la JRS-ASG al requerirle a los proponentes que, como parte del proceso de cualificarlos a través del RFQ, certificaran que no estaban impedidos de contratar con el Gobierno.[28]  Consecuentemente, resolvió que le correspondía a la JRS-ASG atender la controversia presentada por Aireko atinente a su reputación e integridad comercial previo a que este licitador pudiese acudir al foro judicial. La JRS-ASG explicó su razonamiento en la *Resolución* emitida a tales efectos, de la siguiente forma:

---

[28]  Sobre este particular, la sección 5e del *Request for Qualifications for General Contractor Prequalification* (RFQ) dispone:

> *Debarment Status: By signing below, the interested General Contractor certifies that it is not currently debarred from performing public work for the Commonwealth of Puerto Rico.*

> Si la Junta de Subastas [de la UPR] de alguna
> forma **utilizó o se benefició del proceso del
> Registro Único de Licitadores (RUL)** para
> certificar, cualificar, evaluar y/o aprobar
> los licitadores en el RFP, tenemos que
> concluir que la Junta de Subasta[s] **se
> sometió, implícitamente a los procedimientos
> de la ASG.** A[u]n cuando fue la Junta de
> Subasta[s] de la UPR la que llevó a cabo la
> evaluación del RFP, esta Junta Revisora
> mantiene jurisdicción sobre cualquier
> reconsideración administrativa del mencionado
> RFP. (Énfasis nuestro).

La JRS-ASG apoyó su determinación en las disposiciones del Art. 22 del Plan, las cuales permiten a las entidades excluidas de este esquema utilizar los servicios disponibles a través de la ASG para adquirir bienes y servicios no profesionales. El Tribunal de Apelaciones coincidió con la postura de la JRS-ASG, por lo que le remitió a este organismo administrativo la jurisdicción inicial para atender el planteamiento de Aireko.

Procedemos a analizar los argumentos expuestos por la JRS-ASG utilizando como base los principios cardinales de hermenéutica antes reseñados, atendiendo en primera instancia el texto claro del estatuto que nos ocupa, así como las enmiendas relevantes de manera integral. Al realizar esta tarea, debemos también estar atentos a las facultades delegadas estatutariamente al organismo administrativo, las cuales delimitan su autoridad.

Primeramente, cuestionamos la aplicabilidad del Art. 22 a gestiones ajenas a la adquisición de bienes y servicios no profesionales a través de la ASG. En el contexto de la controversia que tenemos ante nuestra consideración, la interpretación adoptada para justificar

la supuesta sumisión de la JSMP-UPR a los procesos ante la JRS-ASG concerniente a esta disposición resulta forzada.

Cabe señalar que nos encontramos ante un postulado claro, libre de ambigüedad. Según indicamos anteriormente, el Art. 22 posibilita, por vía de excepción, que entidades gubernamentales excluidas por el propio Plan, puedan aprovecharse de los trámites de compra implementados por la ASG. De este modo, se les permite participar, **voluntariamente y mediante acuerdo**, de los trámites para **procurar bienes y servicios** no profesionales a través de los procesos establecidos por la ASG. Ambas condiciones se encuentran ausentes en este caso. De una parte, no consta en autos acuerdo alguno entre la UPR y la ASG conforme lo exige taxativamente la medida.

Tampoco inciden los hechos presentados en estos recursos con la compra de bienes y servicios a tenor del Plan. Todas las gestiones encaminadas a atraer proponentes para el desarrollo del proyecto se encauzaron mediante el procedimiento provisto en el Reglamento de Adjudicación de Proyectos de Mejoras Permanentes de la UPR, Reglamento Núm. 8369, UPR, 5 de junio de 2013, y estuvieron a cargo **exclusivamente** de la JSMP-UPR, sin intervención alguna de la ASG.

Por último, aun asumiendo que el Art. 22 aplica a los hechos de este caso, contrario a lo intimado por la JRS-ASG y el Tribunal de Apelaciones, **el requerimiento de información atinente al RUL *per se***, no implica que la JSMP-

UPR haya consentido a allanarse a los trámites de revisión provistos en el Plan.

No existe en autos documentación que evidencie algún acto deliberado por parte de la JSMP-UPR que sustente su intención de acogerse a los procesos relacionados a la JRS-ASG. Como parte del trámite de cualificar a los proponentes mediante el RFQ, la JSMP-UPR simplemente les requirió verificar que no estaban impedidos de contratar con el Gobierno de Puerto Rico. De esta manera la UPR se asegura que estos han sido cualificados bajo los estándares establecidos en el RUL.[29] Sin embargo, ello no implica que la adjudicación que eventualmente haga la JSMP-UPR relacionada a una propuesta, estará sujeta a la jurisdicción de la JRS-ASG. Por el contrario, cualquier parte inconforme con la determinación de la UPR deberá solicitar revisión judicial directamente ante el Tribunal de Apelaciones a tono con la Sec. 4.2 de la LPAU, según enmendada, 3 LPRA sec. 2172 (Sup. 2016), sin interferencia de la JRS-AGS.

### B. Aireko

Por su parte, Aireko sostiene que la Ley Núm. 153-2015 extendió la jurisdicción revisora de la JRS-ASG a **todas** las entidades regidas por la LPAU sin excluir a la UPR.[30] Sin

---

[29] La JSMP-UPR puede establecer aquellos requisitos o criterios que estime necesarios para determinar la elegibilidad de los proponentes a proyectos ante su consideración.

[30] Asimismo Aireko argumenta que, en virtud de la Ley Núm. 153-2015, el esquema provisto en el RUL le aplica a la UPR. No obstante, esta ley enmendatoria **no** amplió la facultad revisora de la JRS-ASG a determinaciones de

embargo, contrario a lo argumentado por Aireko y según mencionamos anteriormente, al ampliar el alcance de los procesos de revisión a través de la JRS-ASG, la Ley Núm. 153-2015 cualificó el nuevo ámbito de autoridad de este cuerpo revisor a las determinaciones de agencias, instrumentalidades o entidades gubernamentales de la Rama Ejecutiva **"no excluida[s] del… Plan"**. Sec. 5 de la Ley Núm. 153-2015, enmendando el Art. 55(a) del Plan, 3 LPRA Ap. XIX (Sup. 2016).

Del mismo modo, las enmiendas a la LPAU referentes a reconsideraciones en casos de adjudicación de subastas y a los procesos de revisión judicial, hacen la salvedad que será la JRS-ASG **o la entidad apelativa que corresponda** quien deba intervenir.[31] Por lo tanto, el propio estatuto reconoce que el trámite ante la JRS-ASG **no resulta mandatorio para todos** los componentes gubernamentales afectados.

En fin, a base del texto inequívoco, así como de una lectura integral del Plan y sus enmiendas, concluimos que la JRS-ASG carecía de autoridad para intervenir en la determinación de la JSMP-UPR. Debemos tener presente que, siendo su jurisdicción limitada, las agencias administrativas únicamente están autorizadas a asumir aquellas funciones que se le hayan delegado expresamente mediante mandato legislativo.

---

la UPR. Por lo tanto, el planteamiento atinente al RUL resulta irrelevante al asunto de índole estrictamente jurisdiccional que nos ocupa.

[31]  Secs. 9 y 10 de la Ley Núm. 153-2015, enmendando las Secs. 3.19 y 4.2 de la LPAU, 3 LPRA secs. 2169 y 2172 (Sup. 2016), respectivamente.

Resolvemos, por lo tanto, que erró el Tribunal de Apelaciones al declararse sin jurisdicción y referir las controversias consignadas en los recursos de epígrafe a la JRS-ASG para su disposición.[32]

## IV. CONCLUSIÓN

Por los fundamentos anteriormente indicados, se revoca la Sentencia del Tribunal de Apelaciones emitida el 10 de marzo de 2016 y se devuelven los autos al foro apelativo intermedio para procedimientos ulteriores conforme a lo aquí dispuesto.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

---

[32] Conforme a nuestra determinación en el día de hoy, se hace innecesario disponer del resto de los errores presentados por los promoventes en ambos recursos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| CIC Construction Group, S.E.<br><br>    Peticionario<br><br>        v.<br><br>Junta Revisora de Subastas de la Administración de Servicios Generales<br><br>    Recurrida<br><br>        v.<br><br>Junta de Subastas de Mejoras Permanentes de la UPR; Aireko Construction, LLC; F&R Construction Group, Inc.<br><br>    Partes con Interés<br><br>──────────────<br><br>Aireko Construction, Corp., S.E.<br><br>    Recurrido<br><br>        v.<br><br>Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico; Universidad de Puerto Rico<br><br>    Peticionarios<br><br>──────────────<br><br>F & R Construction Group, Inc.<br><br>    Recurrido<br><br>        v.<br><br>Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico; Universidad de Puerto Rico<br><br>    Peticionarios | CT-2016-0006<br><br><br><br><br>consolidado con<br><br><br><br>CC-2016-347 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 7 de diciembre de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones emitida el 10 de marzo de 2016 y se devuelven

los autos al foro apelativo intermedio para procedimientos ulteriores conforme a lo allí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo