EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| JMG Investment, Inc.<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de la Vivienda; Administración de Desarrollo y Mejoras de Vivienda; MD Engineering Group, C.S.P.; Ing. José Díaz Solivan<br><br>Recurridos | Certiorari<br><br>2019 TSPR 225<br><br>203 DPR ____ |

Número del Caso: CC-2018-771

Fecha: 11 diciembre de 2019

Tribunal de Apelaciones:

    Región Judicial de San Juan y Caguas, Panel Especial

Abogado de la parte Peticionaria:

    Lcdo. Edelmiro Salas González

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Eric O. De La Cruz Iglesias
    Procurador General Auxiliar

Materia: Derecho Procesal Civil – El archivo administrativo por la paralización automática bajo la Ley Promesa, no es el dictamen que pone fin al litigio. El recurso de certiorari es el mecanismo procesal para revisar el archivo administrativo de un caso como consecuencia de la paralización automática bajo la Ley Promesa.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| JMG Investment, Inc.<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de la Vivienda; Administración de Desarrollo y Mejoras de Vivienda; MD Engineering Group, C.S.P.; Ing. José Díaz Solivan<br><br>Recurridos | CC-2018-0771 | *Certiorari* |

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 11 de diciembre de 2019.

JMG Investment, Inc. (JMG o peticionario) solicitó que revisáramos la determinación del Tribunal de Apelaciones y el Tribunal de Primera Instancia de paralizar la totalidad del proceso judicial de autos, en virtud del procedimiento de quiebra del Gobierno de Puerto Rico al amparo del *Puerto Rico Oversight, Management and Economic Stability Act* (PROMESA), 48 USC sec. 2101 *et seq.* Ahora bien, dado el momento en que se presentó el recurso ante este Tribunal, nos vemos precisados a auscultar cuál es el término disponible para recurrir ante nosotros cuando el Gobierno de Puerto Rico, los municipios, sus funcionarios o una de sus instrumentalidades —excluyendo las corporaciones públicas— son parte del proceso judicial. En específico, debemos aclarar si el plazo es de treinta o sesenta días.

Resolvemos que cuando el recurso que se presentó en el Tribunal de Apelaciones es un *certiorari*, el término

disponible para recurrir ante nos es de treinta días. Esta es la norma que aplica en este caso, por lo que estamos impedidos de revisar el error que señaló JMG.

Veamos los antecedentes fácticos que originan nuestros pronunciamientos.

## I

El 11 de octubre de 2007 el peticionario presentó una demanda por incumplimiento de contrato y cobro de dinero contra el Gobierno de Puerto Rico, el Departamento de la Vivienda y la Administración de Desarrollo y Mejoras de Viviendas. Además, incluyó una alegación contra MD Engineering Group, CSP, Inc. y el Ing. José Díaz Solivan por presunta interferencia torticera con las obligaciones contractuales.

Luego de varios incidentes procesales no necesarios pormenorizar, el 2 de agosto de 2017, JMG presentó ante el Tribunal de Primera Instancia una *Moción Informativa sobre paralización parcial a favor del ELA y para continuar procedimientos con codemandados no quebrados*. Sostuvo que la suspensión automática que autoriza PROMESA no impedía que el caso continuara contra los demás codemandados que no forman parte del Gobierno de Puerto Rico. Por lo tanto, solicitó que se paralizara el caso solo en cuanto al Estado Libre Asociado de Puerto Rico, y prosiguiera el proceso contra los demandados MD Engineering Group, CSP, Inc., y el ingeniero Díaz Solivan.

MD Engineering Group, CSP, Inc., se opuso a esta petición y planteó que el caso debía ser paralizado en su totalidad. Por su parte, el 31 de agosto de 2017 el Gobierno de Puerto Rico presentó un aviso de paralización automática de los procedimientos. En este solicitó la suspensión del pleito judicial en virtud del proceso de quiebra en el tribunal federal.

Evaluados los planteamientos de las partes, el Tribunal de Primera Instancia declaró paralizada la totalidad del caso. Es decir, denegó la petición de JMG de no suspender la acción instada contra aquellos que no forman parte del proceso de quiebra.

Inconforme, el peticionario acudió al Tribunal de Apelaciones mediante un recurso que tituló *Apelación* en el cual cuestionó la determinación del foro primario de suspender el caso en cuanto a todas las partes.[1] El 26 de junio de 2018 el tribunal apelativo intermedio confirmó el dictamen del foro primario.[2] Concluyó que procedía extender la paralización a los codemandados que no forman parte del Estado. Coligió que no sería posible continuar el proceso judicial sin afectar los derechos y los intereses del Gobierno de Puerto Rico, especialmente cuando JMG imputó

---

[1] En su recurso imputó el error siguiente: "Erró el Honorable TPI al paralizar la totalidad del caso y no permitir que se continúen los procedimientos contra los codemandados no quebrados que no son deudores bajo la quiebra del ELA, extendiéndole a estos alegados deudores solidarios que no están en quiebra las protecciones personales del ELA bajo 11 U.S.C. sec. 362(A)".

[2] Apéndice de la Petición de *certiorari,* págs. 2071-2072. Esta decisión se notificó el 27 de junio de 2018.

responsabilidad solidaria entre todos los codemandados, lo cual colocaría al Estado en un estado de indefensión.

El 24 de agosto de 2018 ──cincuenta y ocho días después── el peticionario acudió ante esta Curia y señaló, como único error, lo siguiente:

> Erró el honorable TPI al paralizar la totalidad del caso y no permitir que se continúen los procedimientos contra los codemandados no quebrados que no son deudores bajo la quiebra del ELA, extendiéndole a estos alegados deudores solidarios que no están en quiebra las protecciones personales del ELA bajo 11 U.S.C. sec. 362(A).[3]

El 25 de enero de 2019 expedimos el recurso, y el 10 de abril JMG presentó su alegato. Ahora bien, el 2 de mayo de 2019 compareció la Oficina del Procurador General, en representación del Gobierno de Puerto Rico. Entre otras cosas, esbozó que la petición de *certiorari* ante este Tribunal se presentó fuera del término de treinta días dispuesto en las Reglas de Procedimiento Civil. Arguyó que el recurso ante el foro apelativo era, en efecto, un *certiorari* que no activa el plazo de sesenta días que dispone la Regla 52.2 de Procedimiento Civil. Peticionó la desestimación del recurso por falta de jurisdicción.

Examinada la solicitud del Gobierno de Puerto Rico, ──estando presto este Tribunal a conceder al peticionario un término para expresarse sobre la moción de desestimación── el 10 de mayo de 2019 el peticionario compareció mediante

---

[3] Petición de *certiorari,* pág. 9.

una *Moción en oposición a solicitud de desestimación*.[4] Luego de recibir y evaluar los argumentos esbozados por el peticionario, así como una réplica del Estado, desestimamos el recurso de autos. Veamos por qué.

## II

La jurisdicción consiste en el poder o autoridad que tiene el tribunal para resolver un caso o controversia.[5] Por ello, es norma reiterada que las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia.[6] De hecho, los tribunales tienen que ser celosos guardianes, por lo que tienen el deber ministerial de examinarla y evaluarla rigurosamente, ya sea porque fuera cuestionada o a iniciativa propia, independientemente de la etapa en que se encuentre el proceso.[7] Es que, conforme hemos establecido, la ausencia de jurisdicción no es susceptible de ser subsanada, ni siquiera ante la anuencia de las partes.[8] Por consiguiente, es nulo cualquier dictamen que se

---

[4] Ese mismo día MD Engineering Group, CSP y el Ing. José Díaz Solivan presentaron conjuntamente su alegato.

[5] *Fuentes Bonilla v. ELA*, 200 DPR 364, 372 (2018). Véanse, además: *CIC Const. v. JMSP-UPR*, 196 DPR 964, 972 (2016); *Lozada Sánchez et al. v. JCA*, 184 DPR 898, 909 (2012), citando a *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011), y a *Asoc. Punta las Marías v. A.R.Pe.*, 170 DPR 253, 263 esc. 3 (2007).

[6] *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 233-234 (2014); *Muns. Aguada y Aguadilla v. JCA*, 190 DPR 122, 131 (2014); *Hernández, Romero v. Pol. de P.R.*, 177 DPR 121, 135 (2009); *García v. Hormigonera Mayagüezana*, 172 DPR 1, 7 (2007); *J.P. v. Frente Unido I*, 165 DPR 445, 458-459 (2005).

[7] *Horizon v. Jta. Revisora, RA Holdings*, supra, pág. 234; *Cordero v. A.R.Pe.*, supra, pág. 457; *J.P. v. Frente Unido I*, supra, pág. 459; *Asoc. Dueños Casas Parguera, Inc. v. J.P.*, 148 DPR 307, 312 (1999). Véase *Aut. Desp. Sólidos v. Mun. San Juan*, 150 DPR 106, 111 (2000).

[8] *Fuentes Bonilla v. ELA,* supra, pág. 372.

emita sobre los méritos de una controversia cuando se carece de jurisdicción.[9]

Se está falto de jurisdicción, precisamente, cuando se recurre fuera de los términos disponibles. En ese sentido, un tribunal no puede revisar los méritos de una decisión si, por ejemplo, el recurso de apelación o de *certiorari* no se presentó dentro del término estatuido en las disposiciones procesales correspondientes.

La Regla 52.2 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, establece el término y los efectos de la presentación de una apelación o un recurso de *certiorari* ante este Tribunal. Esta dispone que "[l]os recursos de *certiorari* [...] al Tribunal Supremo para revisar, discrecionalmente, las sentencias o resoluciones del Tribunal de Apelaciones **en recursos de apelación** [...] deberán ser presentados dentro del término jurisdiccional de treinta (30) días". (Énfasis suplido).[10] Además, instituye que "[l]os recursos de *certiorari* [...] al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones **en recursos discrecionales** o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán ser presentados dentro del término de **treinta (30) días**". (Énfasis y subrayado suplido).[11] Este último término, conforme señala el estatuto, se trata de un

---

[9] Íd.
[10] Regla 52.2(b) de Procedimiento Civil, 32 LPRA Ap. V.
[11] Íd.

plazo de **cumplimiento estricto**, pero que solo puede ser prorrogado "cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*".[12]

En algunas circunstancias el término para recurrir a los foros apelativos es distinto cuando, por ejemplo, el Gobierno de Puerto Rico es parte del proceso judicial. En lo pertinente, el inciso (c) de la Regla 52.2, *supra*, establece que

> [...] [e]n aquellos casos en que el Estado Libre Asociado de Puerto Rico y los municipios, sus funcionarios(as) o una de sus instrumentalidades, excluyendo a las corporaciones públicas, sean parte en un pleito, el recurso de apelación para revisar sentencias del Tribunal de Primera Instancia o **el recurso de certiorari para revisar discrecionalmente las sentencias o resoluciones del Tribunal de Apelaciones <u>en recursos de apelación</u>**, deberán ser presentados por cualquier parte en el pleito perjudicada por la sentencia o la resolución, **dentro del <u>término jurisdiccional</u> de sesenta (60) días** contados desde la fecha del archivo en autos de copia de la sentencia o resolución recurrida. (Énfasis y subrayado suplido).

Nótese que el término de sesenta días aplica en la presentación de apelaciones al Tribunal de Apelaciones o en la presentación de un recurso de *certiorari* al Tribunal Supremo para revisar las sentencias o resoluciones del foro apelativo intermedio **que surgieron de un recurso de**

---

[12] Íd. Véase, además, *Soto Pino v. Uno Radio Group,* 189 DPR 84, 87 (2013) ("los tribunales en nuestra jurisdicción carecen de discreción para prorrogar estos términos de manera automática"); *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 652, 657 (1997) ("No existe lugar a dudas que el artículo citado exige *expresamente* 'circunstancias especiales debidamente sustentadas en la petición de *certiorari*' para prorrogar el plazo de treinta (30) días de cumplimiento estricto. […] Su texto no tiene visos de ambigüedad y es claro en su contenido con respecto a cuándo procede la extensión de tal término").

**apelación.**[13] Por esto es que la Regla 52.2(c) considera el plazo como un término jurisdiccional.

Igual trato surge del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. La Regla 20(A)(1), relativa a la presentación de los *certiorari* en casos civiles que provienen de una sentencia del Tribunal de Apelaciones **en un recurso de apelación**, concede un término jurisdiccional de treinta días, salvo sean parte el Estado Libre Asociado de Puerto Rico, sus municipios, sus funcionarios o funcionarias, o una de sus instrumentalidades, excluyendo a las corporaciones públicas. Así pues, conforme la Regla 20(A)(1), de recurrirse de un dictamen proveniente del foro intermedio en un recurso de apelación, el término disponible es de sesenta días.

Para los *certiorari* con plazos de cumplimiento estricto, nuestro Reglamento no hace esa distinción. La Regla 20(B)(1) del Reglamento del Tribunal Supremo, *supra*, establece que

> (1) Para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones **dictadas en recursos discrecionales**, excepto en el certiorari de casos originados en la Comisión Estatal de Elecciones, el recurso se formalizará mediante la presentación de la solicitud dentro de un término de treinta (30) días a partir del archivo en autos de copia de la notificación de

---

[13] Véase *3/0 Const., S.E. v. Mun. de Río Grande*, 147 DPR 352 (1998), en el cual, bajo el texto de las Reglas de Procedimiento Civil derogadas, se reconoció que el término para presentar un recurso de *certiorari* ante el Tribunal Supremo para revisar un dictamen **en apelación** del foro intermedio es de sesenta días. El tribunal de instancia había emitido una sentencia desestimando el caso. Para otro caso en el cual lo que se presentó ante el tribunal intermedio fue una apelación y luego se recurrió ante este Tribunal, véase *Sist. Univ. Ana G. Méndez v. C.E.S. II,* 142 DPR 558 (1997).

la sentencia o resolución de la cual se recurre.
(Énfasis y subrayado suplido).[14]

Acorde con esto, en su obra *Práctica Jurídica de Puerto
Rico: Derecho Procesal Civil,* el Prof. Rafael Hernández
Colón sostiene que el plazo para presentar la petición de
*certiorari* **contra cualquier sentencia o resolución del
Tribunal de Apelaciones, dictada en recursos discrecionales,**
es de treinta días.[15] Señala, además, que este término,
distinto al dispuesto en el inciso (c) de la Regla 52.2,
*supra*, es de cumplimiento estricto y, según mencionamos,
solo puede ser prorrogado cuando medien circunstancias
especiales debidamente sustentadas en la petición de
*certiorari*.[16] Se trata, entonces, de que en estos escenarios
aplica el plazo dispuesto en el segundo párrafo del inciso
(b) de la Regla 52.2. Conforme indica el profesor Hernández
Colón, "[e]ste es el término aplicable a cualquier sentencia
o resolución emitida por el TA para revisar cualquier
resolución u orden interlocutoria dictada por el TPI".[17]

Ante este marco, solo podemos llegar a una conclusión.
Cuando es parte el Estado Libre Asociado de Puerto Rico y
los municipios, sus funcionarios o una de sus
instrumentalidades, excluyendo a las corporaciones

---

[14] Al igual que las Reglas de Procedimiento Civil, *supra*, la Regla 20(B) de nuestro Reglamento obliga a que las partes cumplan con este plazo, "excepto cuando medien circunstancias especiales debidamente sustentadas en la petición de certiorari".

[15] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., LexisNexis, San Juan, 2017, pág. 564.

[16] Íd.

[17] Íd.

públicas, el término que aplica dependerá del tipo de recurso que se presentó al foro apelativo intermedio. Si se instó un *certiorari* en el Tribunal de Apelaciones, el plazo dispuesto para recurrir al Tribunal Supremo es de treinta días. En cambio, si se recurrió en apelación al Tribunal de Apelaciones, el término disponible para presentar el recurso de *certiorari* ante el Tribunal Supremo es de sesenta días.

**III**

El Art. 4.006(a) de la Ley de la Judicatura de Puerto Rico de 2003, según enmendada, 4 LPRA sec. 24y(a), establece que el Tribunal de Apelaciones conocerá mediante recursos de apelación de toda sentencia final que dicte el Tribunal de Primera Instancia. En cambio, el inciso (b) estatuye que conocerá mediante *certiorari* de cualquier resolución u orden que dicte el foro primario. En ese sentido, para que el dictamen sea apelable es necesario que se trate de una sentencia final, pues una resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones.[18]

Cónsono con lo anterior, hemos indicado que, a pesar de la interrelación existente entre una resolución y una sentencia, "[n]inguna de las dos constituyen un término genérico dentro del cual pueda entenderse comprendida la

---

[18] Véanse: *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 251 (2012); *Torres Martínez v. Torres Guigliotty*, 175 DPR 83, 96 (2008); J. A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Publicaciones JTS, 2011, T. IV, pág. 1526. Véase, además, la Regla 52.2 de Procedimiento Civil, *supra*.

otra".[19] Por el contrario, lo que existe es una distinción conceptual categórica entre ambas.[20]

A esos efectos, las Reglas de Procedimiento Civil distinguen sustantivamente las sentencias de las resoluciones. La Regla 42.1 de Procedimiento Civil, *supra*, dispone que "el término 'sentencia' incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. El término 'resolución' incluye cualquier dictamen que pone fin a un incidente dentro del proceso judicial". Es decir, para que un dictamen constituya una *sentencia* debe adjudicar definitivamente el caso de forma tal que únicamente quede pendiente la ejecución de esa determinación final.[21] Por el contrario, la resolución solo pone fin a un incidente dentro del proceso judicial.[22]

Atada a la conceptualización mencionada, hemos reconocido como un principio de fuerte arraigo en nuestro sistema judicial que "el nombre no hace la cosa".[23] Es decir,

---

[19] *García v. Padró*, 165 DPR 324, 332-333 (2005); *U.S. Fire Ins. v. A.E.E.*, 151 DPR 962, 967 (2000).

[20] *García v. Padró*, supra, pág. 333; *U.S. Fire Ins. v. A.E.E.*, supra, pág. 967.

[21] *Cortés Pagán v. González Colón*, 184 DPR 807, 812 (2012); *Torres Martínez v. Torres Ghigliotty*, supra, pág. 94; *Johnson & Johnson v. Mun. de San Juan,* 172 DPR 840, 848 (2007); *Medio Mundo, Inc. v. Rivera*, 154 DPR 315, 327 (2001). Véanse: *Abrams Rivera v. E.L.A.*, 178 DPR 914 (2010); *García v. Padró*, supra, págs. 331-332; *Cárdenas Maxán v. Rodríguez*, 119 DPR 642, 655 (1987); *Cortés Román v. E.L.A.*, 106 DPR 504, 509 (1977); *Dalmau v. Quiñones*, 78 DPR 551, 556 (1955). Véase, además, Cuevas Segarra, *op. cit.*, pág. 1218.

[22] *Peerless Oil v. Hnos. Torres Pérez*, supra, pág. 251; *Cortés Pagán v. González Colón*, supra, pág. 813; *Torres Martínez v. Torres Ghigliotty*, supra, págs. 95-96; *Johnson & Johnson v. Mun. de San Juan*, supra, pág. 848.

[23] *Mun. Rincón v. Velázquez Muñiz y otros*, 192 DPR 989, 1002 (2015); *García v. Padró*, supra, pág. 333.

los efectos de un recurso no se producen por la denominación que la parte le otorgó, sino por su origen y contenido. Así pues, "[e]l contenido del escrito y **la determinación de la que se recurre, y no el título,** será lo que determinará su naturaleza". (Énfasis suplido).[24] De la única manera que un recurso se atenderá como apelación en el foro apelativo, con los consecuentes efectos que produce su presentación, será cuando se recurra de una sentencia dictada por el foro primario.[25] Esto requiere que el tribunal revisor ausculte la determinación del foro de instancia, de modo que se asegure de que "constituye una resolución revisable, mediante certiorari o si se trata de una sentencia, la cual es apelable".[26]

Expuesta la normativa que impera en nuestra jurisdicción, debemos resolver si en este caso el dictamen emitido por el Tribunal de Primera instancia es una sentencia, revisable mediante apelación, o una resolución u orden interlocutoria, recurrible mediante el mecanismo extraordinario de *certiorari.* De contestar que el recurso ante el foro apelativo intermedio era un *certiorari*, tenemos que resolver si las razones expuestas por el peticionario constituyeron justa causa para el incumplimiento con el plazo de treinta días.

---

[24] *Mun. Rincón v. Velázquez Muñiz y otros*, supra, págs. 1002-1003; *Figueroa v. Del Rosario*, 147 DPR 121, 127 (1998). Véase, además, Cuevas Segarra, *op. cit.*, pág. 1526.

[25] *Mun. Rincón v. Velázquez Muñiz y otros*, supra, pág. 1002.

[26] Íd.

**IV**

En su oposición a la solicitud de desestimación el peticionario esboza dos teorías como alternas para que atendamos la controversia que planteó originalmente ante este Tribunal. Primero, que el plazo que tenía disponible era de sesenta días porque el dictamen del foro primario era un dictamen final.[27] Como fundamento para ello, arguyó que así se ha resuelto por varios Tribunales de Circuito federales.[28] A manera de segunda hipótesis, sostiene que

---

[27] *Moción en oposición a solicitud de desestimación,* págs. 1-2.

[28] Íd. Hizo alusión a los dictámenes siguientes: *In re Conejo Enterprises*, Inc., 96 F.3d 346, 351 (9th Cir. 1996); *In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2nd Cir. 1989); *Tringali v. Hathaway Machinery Co., Inc.,* 796 F.2d 553, 557 (1st Cir. 1986); *In re Delta Resources, Inc.,* 54 F.3d 722, 726 (11th Cir. 1995); *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2nd Cir. 1990); *In re Metter of West Electronics Inc.,* 852 F.2d 79, 81-82 (3rd Cir. 1988). Todos estos casos surgieron en controversias por el levantamiento o modificaciones al *stay*, o el rechazo a ello, en los **tribunales federales**. Es decir, ante circunstancias totalmente distintas a las del caso de autos.

A modo ilustrativo, en *In re Conejo Enterprises*, Inc., supra, lo que se dijo fue que "[t]he decision **of a bankruptcy court** granting or denying relief from an automatic stay under section 362(d) is a final decision reviewable by this court." De hecho, en *In re Chateaugay Corp.,* supra, pág. 1511, otro de los casos a que se refirió JMG, se reconoció que a nivel federal "the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation." Véase, además, *In re Professional Ins. Management*, 285 F.3d 268, 279 (3rd Cir. 2002) ("**considerations unique to bankruptcy appeals** have led us consistently in those cases to construe finality in a more pragmatic, functional sense than with the typical appeal.") (Énfasis suplido). Esto lo han concluido, por ejemplo, sustentados en el Código de Quiebra federal y las disposiciones aplicables a los injunctions en la jurisdicción federal. Íd., pág. 1512 ("The House and Senate reports both likened an automatic stay and a subsequent motion under the new sec. 362(e) [of the Bankruptcy Code] to the stages of an injunction in an ordinary civil case. Thus, the filing of a petition in bankruptcy is equivalent to a temporary restraining order, the preliminary hearing on a motion for relief from the stay is similar to a hearing on a preliminary injunction, and the decision as a result of the final hearing on the motion for relief is equivalent to a permanent injunction. The reports noted: '**the stay is essentially an injunction**'.") (Énfasis suplido). Asimismo, en *Tringali v. Hathaway Machinery Co., Inc.,* supra, el Primer Circuito reiteró lo siguiente con relación a los procesos de quiebra: "proceeding within **a bankruptcy case** ... not the entire case, is the relevant judicial unit for purposes of finality [...]." (Énfasis suplido y corchetes y comillas omitidas).

creyó que el dictamen del foro de instancia era una sentencia final, y que esto es justa causa para prorrogar el término disponible.[29]

Por su parte, el Gobierno de Puerto Rico arguye que el recurso ante el Tribunal de Apelaciones, a pesar de titularse apelación, es un *certiorari*. Por lo tanto, sostiene que el recurso que se instó en este Tribunal debe ser desestimado por haberse presentado fuera del término de cumplimiento estricto dispuesto en nuestras disposiciones procesales.

En el caso de autos la controversia surgió de un dictamen del foro primario que suspendió y archivó administrativamente el pleito judicial contra todas las partes hasta tanto se levantara la paralización o culminara el proceso de quiebra bajo PROMESA. Es decir, se recurrió de una determinación del tribunal de instancia, que tituló *Sentencia*, mediante la cual dio por paralizado la totalidad de la acción instada por JMG. En específico, el foro primario resolvió que

> [d]e conformidad con la sección 301 y la sección 405 de PROMESA, que amplía el alcance de la paralización de las acciones en contra del Estado Libre Asociado de Puerto Rico, a partir de la aprobación de esta ley, 48 U.S.C. 2194; este Tribunal, decreta la paralización de esta acción, dando por terminado el caso.
>
> El Tribunal se reserva jurisdicción para decretar su reapertura, de haber obtenido la parte promovente relevo de la paralización según provisto por la sección 405(g) de PROMESA.

---

[29] *Moción en oposición a solicitud de desestimación,* págs. 2-4.

Ciertamente, la sec. 301(a) del Título III de PROMESA incorporó las secs. 362 y 922 del Código Federal de Quiebras en torno a las paralizaciones automáticas de pleitos contra el deudor y su propiedad.[30] "El objetivo principal de la paralización es liberar al deudor de presiones financieras **mientras se dilucida el procedimiento de quiebra**". (Énfasis suplido).[31] En ese sentido, en casos paralizados por PROMESA, lo que procede en nuestros tribunales es archivar administrativamente el asunto hasta tanto una de las partes nos certifique que se ha levantado la paralización, ya sea por la conclusión del procedimiento de quiebras o mediante una solicitud a esos efectos, según lo dispuesto en la Sección 362(d) del Código de Quiebras, 11 USCA sec. 362(d).

Si bien JMG sostiene que a nivel federal algunos tribunales han resuelto que el levantamiento o la concesión de una petición de paralización automática bajo el Código de Quiebras es un dictamen apelable, esta no es la norma que aplica en nuestros tribunales estatales. En primer lugar, aun cuando la paralización surge en virtud de una ley federal, es importante reconocer que la pregunta que tenemos ante nuestra consideración no es un asunto de derecho procesal federal, sino **una cuestión de derecho procesal** **<u>estatal</u>**. Nótese que lo importante es auscultar el efecto en

---

[30] *Puerto Rico Oversight, Management and Economic Stability Act* (PROMESA), 48 USC sec. 2161(a). Véase *Lab. Clínico et al. v. Depto. Salud et al.,* 198 DPR 790, 790 (2017); *Lacourt Martínez et al. v. JLBP et al.,* 198 DPR 786, 787 (2017).

[31] *Lab. Clínico et al. v. Depto. Salud et al.,* supra, pág. 792, haciendo referencia a 3 Collier on Bankruptcy, sec. 362.03 esc. 6.

el caso ante el Tribunal de Primera Instancia y no en el de quiebras. Así, de primera mano, la controversia lo que exige es que revisemos qué mecanismo procesal procede para revisar el archivo administrativo de un caso **en nuestros tribunales** a consecuencia de la paralización automática que presuntamente se produjo por PROMESA.

En segundo lugar, el contexto del modelo recursivo federal para las decisiones relacionadas a las paralizaciones automáticas al amparo del Código de Quiebras es distinto y no existe en el nuestro. Algunos tribunales federales, dada la naturaleza de los procesos de quiebras, han hecho una analogía entre la paralización automática bajo la Ley de Quiebras federal y la denegatoria, la concesión, la modificación de los *injunctions* para resolver que la paralización del proceso bajo la Ley de Quiebras es apelable.[32] Asimismo, a nivel federal existen disposiciones determinadas para revisar, mediante apelación, los dictámenes u órdenes de los procesos de quiebra.[33] Sin embargo, el proceso de quiebra no se está ventilando en el

---

[32] Véanse, e.g.: *In re Chateaugay Corp.*, supra, pág. 1511; *In re Leimer,* 724 F.2d 744, 746 (8th Cir. 1984). Cabe mencionar que el estatuto sobre *injunctions* dispone lo siguiente:

"**(a)** Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction **of appeals** from:

   **(1)** <u>**Interlocutory orders**</u> of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, **granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions**, except where a direct review may be had in the Supreme Court […]." (Énfasis y subrayado suplido) 28 USCA sec. 1292.

[33] Véase 28 USCA sec. 158.

Tribunal de Primera Instancia, ni este es un tribunal federal. En virtud de lo anterior, no nos compete expresarnos con mayor profundidad sobre la normativa federal que, a todas luces, resulta impertinente e inaplicable.[34]

Como vimos, la vía aplicable para revisar las determinaciones judiciales en nuestra jurisdicción está consignada en nuestras reglas procesales. Como norma general, para que un asunto sea revisable mediante el mecanismo de apelación, debe tratarse de una sentencia propiamente. Es decir, para poder apelar en este caso tendríamos que concluir que la decisión de archivar administrativamente el caso es la determinación que **acaba definitivamente el asunto litigioso** y no queda nada más que adjudicar.

El **archivo administrativo** por la paralización automática no es el dictamen que pone fin definitivo al asunto litigioso. Por el contrario, en *Pueblo v. Rodríguez Maldonado,* 185 DPR 504, 516 n. 12 (2012), señalamos que un "archivo administrativo es una modalidad generalizada por la cual los tribunales de instancia archivan **temporalmente** un caso que está inactivo, para que las estadísticas judiciales no lo reflejen como un caso **pendiente de resolución**". (Énfasis suplido).

---

[34] Ante este hecho, resulta también innecesario analizar la jurisprudencia expuesta por la Oficina del Procurador General, a saber: *In re Atlas,* 761 F.3d 177, 182 (1st Cir. 2014); *Peaje Invs. LLC v. García-Padilla,* 845 F.3d 505 (2017); *Municipality of San Juan v. Puerto Rico,* 919 F.3d. 565 (1st Cir. 2019), a los efectos de que se puede apelar cuando la decisión recurrida "*definitively decided a discrete, fully-developed issue that is not reviewable somewhere else.*"

En el caso de la paralización automática decretada por PROMESA, la situación no es distinta. Este archivo se efectúa a nivel estatal dada la inactividad que se producirá en el caso hasta tanto se levante la paralización en el foro federal. La controversia central del pleito en cuestión en nuestros tribunales continúa existente. El pleito, en todo caso, se encuentra en espera para que se puedan proseguir dilucidando conforme la etapa en la que se encontraba antes del archivo administrativo. Esto es, se trata de **un caso no terminado** y para el cual no se ha emitido el dictamen final necesario para instar una apelación al Tribunal de Apelaciones.

Tampoco existe una disposición en el ordenamiento jurídico estatal que disponga, como excepción, que una determinación como la de este caso es apelable.[35] Por lo tanto, los planteamientos de JMG no se ajustan a nuestro modelo apelativo. Que el foro primario llamara a su dictamen sentencia, que se presentara un recurso que se tituló apelación o que el tribunal de apelaciones atendiera el recurso equívocamente no modifica la naturaleza de la determinación del foro primario y el plazo para recurrir ante este Tribunal. La obligación de ser guardianes celosos

---

[35] A modo ilustrativo, si acudiéramos a las disposiciones de *injunctions* contenidas en nuestra Regla 57 de Procedimiento Civil, *supra*, surge que estos dictámenes son revisables mediante *certiorari.* La Regla 52.1 establece que "[e]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una orden de carácter dispositivo".

de los términos para recurrir a un foro revisor no es solo de los tribunales.[36] En primera instancia corresponde a las partes velar por no hacerlo a destiempo.[37] Acoger los argumentos del peticionario nos obligaría a implementar una norma mediante la cual todo constituiría justa causa o circunstancias especiales para extender los términos, pues, de ordinario, instar un recurso ante los foros apelativos fuera de los plazos estatuidos es un acto inconsciente y que se cometió por error.[38] No podemos asumir esa posición.

En *Soto Pino v. Uno Radio Group,* 189 DPR 84, 93 (2013), reiteramos la necesidad de que, en efecto, se demostrara justa causa como requisito previo para extender un término de cumplimiento estricto.[39] Allí expresamos que

> [s]i se permite que la acreditación de la justa causa se convierta en un juego de mero automatismo en el que los abogados conjuran excusas genéricas, carentes de detalles en cuanto a las circunstancias particulares que causaron la tardanza en cumplir con el término, se trastocaría todo nuestro ordenamiento jurídico. De esa manera se convertirían los términos reglamentarios en

---

[36] Véase *Rosario Domínguez v. ELA,* 198 DPR 197, 209 (2017).

[37] *Soto Pino v. Uno Radio Group,* supra, pág. 97.

[38] Íd., pág. 93. En *Arriaga v. F.S.E.,* 145 DPR 122, 132 (1998), expresamos que "[a]legaciones tales como […] que el incumplimiento fue 'involuntario', que 'no se debió a falta de interés', que no hubo 'menosprecio al proceso', o de que ahora 'existe un firme propósito de enmienda', no constituyen justa causa. No es con vaguedades, excusas o planteamientos estereotipados que se cumple con el requisito de justa causa, sino con explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales"). Asimismo, en *Rosario Domínguez v. ELA,* supra, pág. 210, reiteramos que "no se permiten vaguedades, excusas o planteamientos estereotipados". Distíngase de *Rojas v. Axtmayer Ent. Inc.,* 150 DPR 560 (2000), y *Lugo v. Suárez,* 165 DPR 729 (2005), que se debieron al estado crítico de salud del abogado y la enfermedad y hospitalización de la esposa del representante legal, respectivamente.

[39] Véanse, además: *Rosario Domínguez v. ELA,* supra, pág. 210; *Rivera Marcucci v. Suiza Dairy,* 196 DPR 157, 170 (2016); *Bco. Popular de P.R. v. Mun. de Aguadilla,* supra, pág. 657.

metas amorfas que cualquier parte podría postergar.[40]

No podemos aplicar una doble vara o un estándar distinto al que deben cumplir los foros inferiores.[41] Así pues, como estamos imposibilitados de arrogarnos la jurisdicción que no tenemos, procede desestimar el recurso de autos sin pasar juicio sobre los méritos de los errores imputados por el peticionario.[42] Para que pudiéramos revisar los méritos de los errores señalados por el peticionario, la petición de *certiorari* debió presentarse en o antes de los treinta días desde el archivo en autos de la resolución del Tribunal de Apelaciones. El recurso tenía que presentarse en o antes del 27 de julio de 2018, salvo hubiera circunstancias especiales que ameritaran prorrogar este término, las cuales debían esbozarse en la petición de *certiorari*.[43] Sin embargo, se instó tardíamente, el 24 de agosto de 2018; **veintiocho días después del plazo disponible** y sin que se expusieran circunstancias que nos movieran a

---

[40] *Soto Pino v. Uno Radio Group,* supra, pág. 97.

[41] Véase *García Ramis v. Serrallés,* 171 DPR 250 (2007), el cual el tribunal apelado justificó su jurisdicción mediante dos fundamentos, a saber: que el recurso se había presentado pocos días después de haberse vencido el término correspondiente y que la determinación del foro recurrido perpetuaría una situación improcedente en derecho. Allí revocamos al foro apelativo.

[42] Véanse, *Arriaga v. F.S.E.,* supra, pág. 133; *Bco. Popular de P.R. v. Mun. de Aguadilla,* supra; *Pueblo v. Fragoso Sierra,* 109 DPR 536, 539 (1980).

[43] Véase *Soto Pino v. Uno Radio Group, supra,* pág. 92 ("La parte que actúa tardíamente debe hacer constar las *circunstancias específicas* que ameriten reconocerse como justa causa para prorrogar un término de cumplimiento estricto. Si no lo hace, los tribunales carecen de discreción para prorrogar el término y, por ende, acoger el recurso ante su consideración"). (Corchetes, citas y comillas omitidas).

extender el referido término, ni en la petición de *certiorari* ni posteriormente.[44]

Por los fundamentos expuestos, desestimamos el recurso de *certiorari* presentado por el peticionario y se devuelve al Tribunal de Primera Instancia para que proceda con el archivo administrativo del caso hasta tanto haya culminado el procedimiento de quiebra en *In re: The Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico*, No. 17-BK-3283 (LTS), o que la paralización automática haya sido levantada.

Se dictará Sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

---

[44] Si JMG insiste en que no debió paralizarse el proceso contra todos los recurridos, **deberá acudir el tribunal federal** y peticionar que se levante la paralización total o parcial del caso.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| JMG Investment, Inc.<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de la Vivienda; Administración de Desarrollo y Mejoras de Vivienda; MD Engineering Group, C.S.P.; Ing. José Díaz Solivan<br><br>Recurridos | CC-2018-0771 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de diciembre de 2019.

Por lo fundamentos expuestos en la opinión que antecede, los cuales se hacen formar parte de esta sentencia, desestimamos el recurso de *certiorari* presentado por el peticionario y se devuelve al Tribunal de Primera Instancia para que proceda con el archivo administrativo del caso hasta tanto haya culminado el procedimiento de quiebra en *In re: The Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico*, No. 17-BK-3283 (LTS), o que la paralización automática haya sido levantada.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurrió sin opinión escrita. El Juez Asociado señor Estrella Martínez emitió una opinión concurrente en parte y disidente en parte. El Juez Asociado señor Colón Pérez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| JMG Investment, Inc.<br><br>　　　　Peticionario<br><br>　　　　　v.<br><br>Estado Libre Asociado de<br>Puerto Rico; Departamento<br>de la Vivienda; Administración<br>de Desarrollo y Mejoras de<br>Vivienda; MD Engineering Group,<br>C.S.P; Ing. José Díaz Solivan<br><br>　　　　Recurridos | CC-2018-0771 | Certiorari |

Opinión concurrente en parte y disidente en parte emitida por el Juez Asociado señor Estrella Martínez

San Juan, Puerto Rico, a 11 de diciembre de 2019.

Hoy el Tribunal corrige errores cometidos por los foros recurridos, pero contradictoriamente la parte peticionaria sale perdiendo y sin un remedio adecuado. Esa situación paradójica se resolvía en este caso con una determinación sencilla y justa: pautar la norma con carácter prospectivo. Como una mayoría de este Tribunal desechó esa opción, respetuosamente concurro en parte y disiento en parte.

Particularmente, **disiento por no estar de acuerdo con la aplicación retroactiva de la interpretación de la norma procesal reconocida hoy por este Tribunal**. Por el contrario, procedía aplicar la misma prospectivamente y, así, acoger como justa causa para la demora en la presentación del recurso el hecho de

que los foros recurridos indujeron a error y el desconocimiento de la parte de lo que este Tribunal pautaría. Me explico.

I

El expediente refleja que la JMG Investment, Inc. (peticionaria) presentó una demanda por incumplimiento de contrato y cobro de dinero en contra del Gobierno de Puerto Rico y otras partes privadas. Ante la aprobación de la Puerto Rico Oversight, Management and Economic Stability Act (PROMESA), el Tribunal de Primera Instancia paralizó el caso en su totalidad. Ello, a pesar de la oposición de la peticionaria, quien sostuvo que la paralización automática en virtud de PROMESA no impedía la continuación del caso con las partes que no fueran el Gobierno. Particularmente, el dictamen emitido por el foro primario fue titulado "Sentencia" y en lo pertinente decretó "la paralización de esta acción, **dando por terminado el caso**". (Énfasis nuestro). Consecuentemente, la peticionaria presentó un recurso de apelación. Explicó que el dictamen allí apelado era una sentencia que daba por terminado el caso en vista de la radicación de la quiebra por el Estado. Así, el Tribunal de Apelaciones, **al acoger el recurso como una apelación**, dictó una **sentencia**, mediante la cual confirmó el dictamen apelado. A raíz de ello, la peticionaria presentó su recurso de certiorari ante este Tribunal bajo la creencia de que aplicaba el término de sesenta (60) días. Ello, pues el recurso atendido por el Tribunal de Apelaciones fue una apelación y una de las partes era el Estado. Ante tal hecho, el Estado solicita la desestimación del certiorari por tardío. Ahora bien, reconoce

que por tratarse de una controversia procesal novel este Tribunal debía pautar mediante una Opinión. En oposición a la solicitud de desestimación, la peticionaria planteó como justa causa "[e]l que dos (2) tribunales, cuatro (4) jueces y cuatro (4) abogados aceptaran en todo momento y consideraran que la Sentencia del TPI era un dictamen final apelable y no un interlocutorio […]". Véase, Moción en oposición a solicitud de desestimación, pág. 4.

## II

Aunque coincido con la ponencia del caso de epígrafe en que el dictamen del foro primario no era propiamente una sentencia, sino una resolución; y que, como tal, el recurso presentado ante el tribunal intermedio era un recurso de certiorari, no me parece acertado obviar el hecho de que, a través de esta ponencia, es que se aclara tal asunto y se pauta una nueva interpretación relacionada con la ley PROMESA. Precisamente, una ley especial creada a nivel federal con una aplicación novel en nuestra jurisdicción y de reciente vigencia. Aunque aquí no esté bajo análisis la aplicación sustantiva de la ley PROMESA, sí está palpablemente ante la consideración del Tribunal las consecuencias procesales de su aplicación en nuestros foros estatales. Como he resaltado anteriormente, la ley PROMESA "creó un proceso **particular** de quiebra", por lo que no podemos partir de la premisa general de que sus efectos procesales tienen que ser de conocimiento certero por la comunidad jurídica. (Énfasis suplido). Véase, Vera González v. ELA, 199 DPR 995, 1003 (2018) (Juez Asociado Estrella Martínez,

voto particular disidente). Ello, se demuestra cuando los propios foros recurridos incurrieron en el mismo error que cometió la parte, al igual que las restantes partes en el pleito. Asimismo, ante el hecho de que este Tribunal reconoció la necesidad de pautar, mediante Opinión, las consecuencias procesales apelativas de la aplicación de la ley PROMESA.

Ante tal escenario y por tratarse de un término de cumplimiento estricto, este Tribunal debió acoger como una justa causa el desconocimiento de la parte sobre lo que se pretende pautar ahora en esta ponencia. Cuando se trata de un término de cumplimiento estricto, quedamos liberados del automatismo de un requisito jurisdiccional y podemos proveer justicia según lo ameriten las circunstancias. Arriaga v. FSE, 145 DPR 122, 131 (1998). Aunque es norma reiterada que los términos de cumplimiento estricto no pueden ser extendidos sin una justificación válida y acreditada, esta norma no puede ser aplicada de manera inflexible o automática. Rojas v. Axtmayer Ent., Inc., 150 DPR 560, 565 (2000).

Resulta razonable, ante el trasfondo procesal antes descrito, que la peticionaria entendiera que el dictamen emitido por el Tribunal de Primera Instancia se trataba de una sentencia y que el recurso ante el Tribunal de Apelaciones fuera una apelación. Ciertamente, tales detalles indujeron a error a la parte. Además, su desconocimiento sobre la implicación de un archivo administrativo al aplicar la ley PROMESA en nuestros tribunales. Máxime, cuando la sentencia recurrida del foro de primera instancia expresamente "dio por terminado el caso". Ese

lenguaje tajante incluso está reñido y excede la naturaleza de un mero archivo administrativo.

Esta patente confusión de los foros recurridos y de la peticionaria es la justa causa que la eximiría del término de treinta (30) días para presentar su recurso de certiorari ante este Alto Foro. Particularmente, porque no podemos atribuirle negligencia al momento de presentar su recurso y la interpretación en contrario conlleva la desestimación de su reclamación. Véase, Pérez Soto v. Cantera Pérez Inc. et al., 188 DPR 98 (2013). Por ello, se debió prorrogar el término y aplicar la nueva norma establecida en la ponencia de manera prospectiva.

En el pasado hemos reconocido que, en el ejercicio de nuestra discreción judicial, podemos emitir opiniones con efecto prospectivo en consideración a las circunstancias fácticas del caso o por consideraciones de justicia y equidad. Rosario Domínguez et al. v. ELA et al., 198 DPR 197, 216 (2017); López v. Porrata Doria, 169 DPR 135, 169 (2006); Isla Verde Rental v. García, 165 DPR 499, 506 (2005). Esta facultad debe ejercitarse principalmente en consideraciones de política pública y orden social, puesto que nuestro norte debe ser conceder remedios justos y equitativos. Datiz v. Hosp. Episcopal, 163 DPR 10 (2004). El criterio para determinar el efecto prospectivo puede depender de la situación fáctica, las circunstancias del caso en particular y consideraciones de equidad y hermenéutica. Gorbea Vallés v. Registrador, 131 DPR 10 (1992). De ese modo, podríamos negarnos a imprimirle efecto retroactivo a una regla

para, a manera de excepción, proteger solamente un interés en particular. Íd. Finalmente, la decisión debe ser una práctica. Precisamente, ya hemos reconocido que "una nueva norma puede tener efecto prospectivo cuando impone un requisito de cumplimiento estricto". Rosario Domínguez et al. v. ELA et al, supra; Febles v. Romar, 159 DPR 714 (2003).

No debemos castigar a una parte cuando sus acciones se basan en la información provista por los mismos tribunales. En esa misma línea de pensamiento, hemos catalogado las notificaciones que inducen a error a las partes como inoficiosas. ¿Por qué la situación aquí plasmada es distinta? La parte, bajo la creencia razonable de que el Tribunal de Primera Instancia emitió una sentencia, pues expresamente plasmó en el dictamen que daba por terminado la totalidad del caso, recurrió al Tribunal de Apelaciones mediante un recurso de apelación y tal foro apelativo así lo acogió y confirmó la sentencia. Al igual que el razonamiento utilizado por este Tribunal en Datiz v. Hosp. Episcopal, supra, no debemos penalizar a JMG Investment, desestimando su recurso, cuando confió en la actuación de los tribunales y de las mismas partes. De este modo, fortalecemos la política judicial de que los casos se ventilen en los méritos.

En la ponencia se hace especial énfasis a que los términos de cumplimiento estricto pueden ser prorrogados, siempre y cuando, la parte solicite la prórroga y sustente su petición en el propio recurso de certiorari. Sin embargo, no podemos exigir lo imposible. Cómo pretender que la parte solicitara la prórroga

y sustentara su petición en el recurso ante nuestra consideración, cuando razonablemente entendía que su recurso era oportuno. Precisamente, la razón de su tardanza surge en la interpretación que se pauta en esta Opinión. Resulta injusto desestimarle el recurso a esta parte por tardío. Como se ha reiterado, las circunstancias procesales que presenta este caso son particulares, por lo cual este Tribunal debió reconocer que era razonable para la parte pensar que el dictamen del Tribunal de Primera Instancia daba por terminado el caso y que, como tal, era un dictamen final, lo que a su vez conllevaba presentar un recurso de apelación ante el Tribunal de Apelaciones. **Máxime, cuando este Tribunal entiende necesario aclarar el asunto y pautar mediante Opinión la interpretación sobre la finalidad del dictamen del foro primario.** Aquí no está presente lo que prohibimos en Soto Pino v. Uno Radio Group, 189 DPR 84 (2013), a saber, la extensión automática de términos y la acreditación de justa causa con "meras alegaciones o excusas superfluas". Precisamente, lo que se busca con la justa causa es darle la oportunidad a una parte cuando su demora ocurra razonablemente, por circunstancias especiales. Arriaga v. FSE, supra.

La situación aquí plasmada nos debe mover como Tribunal de Justicia a reconocer que la aplicación de esta nueva interpretación sobre aspectos procesales de la ley PROMESA resultaría en una patente injusticia para la parte peticionaria. Esto debido a que la privaríamos de revisar su caso en los méritos, cuando propiamente actuó inducida a error por los propios tribunales y no era del todo previsible que la

paralización en virtud de PROMESA redundara en un dictamen interlocutorio y no final. No puedo avalar la aplicación automática de un formalismo que culmina con dejar desprovista a una parte de un remedio justo.


                                    Luis F. Estrella Martínez
                                        Juez Asociado